## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Jordan Christopher Danski,

                    Petitioner,                    Case Number: 21-12409
                                                   Hon. Sean F. Cox

v.

Sherman Campbell,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS AND
## GRANTING CERTIFICATE OF APPEALABILITY IN PART

Jordan Christopher Danski has filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.   Danski, who is proceeding through counsel,

challenges his convictions for first-degree home invasion and unlawfully driving

away an automobile.  He raises four claims for relief.  The Court finds that the claims

do not warrant relief and denies the petition.   The Court grants a certificate of

appealability with respect to Danski's jury instruction and sufficiency of the

evidence claims.  The Court denies a certificate of appealability with respect to the

remaining claims.

## I.   Background

Danski's convictions arise from a home invasion in Sterling Heights, Michigan.  The Michigan Court of Appeals set forth the following relevant facts:

> Defendant's convictions arise from a home invasion during the early morning hours of June 24, 2015, at a home in Sterling Heights.  The intruder took the complainant's purse, phone, and car keys, and drove away in her vehicle, a white Ford Focus, that contained the complainant's set of culinary knives, a gym bag containing clothes, and work-related documents.  The knives, clothes, and the documents were found at two different locations in nearby Clinton Township the following day.  On July 5, 2015, while driving the complainant's car, defendant crashed into an SUV parked in a driveway.  When confronted by a neighbor, he abandoned the vehicle and fled on foot. The police obtained defendant's fingerprints from items inside the vehicle and later the witness identified defendant.  The police arrested defendant and he eventually pleaded guilty to receiving or concealing stolen property contrary to MCL 750.535.

> During a police interview on July 17, 2015, defendant "blurted out 'do you think I'm stupid, I'm not admitting to a home invasion first.'"  The interviewing officer testified that no one had mentioned anything about a home invasion before defendant made this statement.  The police obtained an analysis of defendant's cell phone activity for the night of June 23-24, 2015.  The analysis indicated that defendant's cell phone interacted with the cell phone tower nearest the complainant's home during the early morning hours of June 24, and interacted with other towers consistent with defendant's cell phone moving from the complainant's residence, to the location where the knife set was found, to the location where the paperwork was found, and to his home in Clinton Township.  On January 5, 2016, defendant was charged with home invasion and UDAA.

> Defendant presented the defense theory at trial that someone else committed the home invasion and UDAA.  Defendant introduced testimony through a friend and roommate, Jenah Apolzan, that she saw defendant's deceased friend, Jeffrey Moore, who was another roommate, drive the stolen vehicle. She did not specify on what date

that occurred. The defense also called its own cell phone analysis expert who presented an alternative interpretation of the cell phone usage data.

During their deliberations, the jury submitted questions to the trial court. The jury first asked: "For unlawfully driving away an automobile are we determining guilt on 6/24, or can guilt be determined on 7/5?" They also asked if they could review a transcript of a phone recording. The parties agreed to the manner in which the trial court responded to the jury's first two questions and the jury continued its deliberations. Later, the jury asked the following question: "For CJI 24.1(2), Can 'drove or took it away' be understood as the driver OR a passenger?" In response to that question, the trial court read instructions M Crim JI 24.1, related to UDAA, M Crim JI 8.1, related to aiding and abetting, and M Crim JI 8.5, related to mere presence not being enough to convict. The defense objected to the court providing the aiding and abetting instruction. The jury continued their deliberations and ultimately convicted defendant of both charged offenses.

*People v. Danski*, No. 340762, 2019 WL 1924942, at *1 (Mich. Ct. App. Apr. 30, 2019). These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Danski filed an appeal by right in the Michigan Court of Appeals. He also filed a motion to remand for an evidentiary hearing on his ineffective assistance of counsel claims. The Michigan Court of Appeals granted the motion to remand for an evidentiary hearing with respect to the claim that counsel was ineffective for failing to contact or interview alibi witnesses. *People v. Danski*, No. 340762 (Mich. Ct. App. July 25, 2018) (ECF No. 1-3, PageID.83.) The Michigan Court of Appeals declined to remand with respect to the claim that trial counsel was ineffective based on a speedy trial violation. *Id.*

3

The trial court held an evidentiary hearing where four witnesses, including Danski and his trial attorney, testified.  The trial court also reviewed several affidavits.  The trial court held that counsel was not ineffective for failing to call these witnesses and denied the motion for new trial.  *People v. Danski*, No. 2016-000325-FH (Macomb County Cir. Ct. Oct 2, 2018) (ECF No. 6-17, PageID.1808-13).  The Michigan Court of Appeals then affirmed Danski's convictions.  *Danski¸* 2019 WL 1924942.  Danski filed an application for leave to appeal in the Michigan Supreme Court, which the court denied.  *People v. Danski*, 504 Mich. 999 (Mich. 2019).

Danski returned to the trial court and filed a motion for relief from judgment arguing that trial and appellate counsel were ineffective and that the trial court violated due process by imposing a higher sentence based on Danski's exercise of his right to remain his innocence.  The trial court denied the motion.  1/22/2021 Order*, People v. Danski*, No. 2016-000325-FH (Macomb County Cir. Ct. 2021) (ECF No. 1-7).

The Michigan Court of Appeals denied Danski's subsequent application for leave to appeal "because [Danski] failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Danski,* No. 356106 (Mich. Ct. App. Apr. 16, 2021).  Danski then filed an application for leave to appeal in the Michigan Supreme Court.  The Michigan Supreme Court denied leave to appeal

because Danski "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Danski*, 508 Mich. 953 (Mich. 2021).

Danski then filed the pending petition for a writ of habeas corpus.  He raises these claims:

I.   Whether the state trial court's sua sponte supplemental jury instructions as to the theory of aiding and abetting, which were given in response to a question raised by the jury during deliberations, deprived Danski of his federal constitutional rights to due process and a trial by jury?

II.  Whether the prosecution presented insufficient evidence at trial to establish proof beyond a reasonable doubt that Danski committed the charged offenses: a) Home Invasion – First Degree, and b) UDAA, such that Danski's convictions violate his federal constitutional right to due process?

III. a) Whether Danski's trial counsel deprived Danski of federal constitutional right to the effective assistance of counsel by failing to interview and call alibi witnesses at trial?

     b) Whether Danski's trial counsel deprived Danski of his federal constitutional right to the effective assistance of counsel by 1) failing to object to the prosecution's expert cell phone witness and 2) failing to consult or retain an expert regarding cell phone "triangulation."

     c) Whether Danski's appellate counsel deprived Danski of his federal constitutional right to the effective assistance of counsel by failing to raise on direct appeal the issues of whether trial counsel was ineffective for 1) not objecting to the prosecution's expert cell phone witness and 2) not consulting or retaining an expert regarding cell phone triangulation?

IV.  a) Whether the state trial court violated Danski's federal constitutional right to due process by sentencing Danski to a

higher sentence based on Danski's post-conviction exercise of his right to maintain his innocence?

b) Whether Danski's trial counsel deprived Danski of his federal constitutional right to the effective assistance of counsel by failing to object at sentencing to the state trial court's alleged use of Danski's maintained innocence to heighten his sentence?

c) Whether Danski's appellate counsel deprived him of his federal constitutional right to the effective assistance of counsel by failing to raise on direct appeal the issue of whether the trial court unconstitutionally sentenced Danski based on maintaining his innocence post-conviction?

Respondent argues that a portion of Danski's third claim and his fourth claim are procedurally defaulted. Danski has filed a reply brief. (ECF No. 7.)

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  This presumption is rebutted only with clear and convincing evidence. *Id.*  Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Discussion

### A.  Claim One: Supplemental Jury Instruction

Danski argues that the trial court's *sua sponte* jury instruction regarding aiding and abetting violated his right to due process and a trial by jury.

A habeas petitioner alleging error in a jury instruction must establish not only that the instruction was undesirable or erroneous, "but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147; *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law).  If a petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id*.  The Supreme Court has cautioned that courts must not "parse [jury instructions]

too finely[;]" instead, they "must be evaluated not in isolation but in the context of the entire charge." *Jones v. United States*, 527 U.S. 373, 391 (1999).

During deliberations, the jury submitted this question to the court regarding unlawfully driving away an automobile: "Can 'drove or took it away' be understood as the driver or a passenger?" (ECF No. 6-15, PageID.1511-12.) In response, the trial court decided (over defense objection) to instruct the jury on aiding and abetting and mere presence. (*Id.* at PageID.1512.) Danski argues that the aiding and abetting instruction denied him his right to a jury trial because the trial court deprived the jury of an understanding of what the prosecution had to prove beyond a reasonable doubt. He claims the instruction was inconsistent with the evidence, confused the jury, and did not give the jury the opportunity to return a general not guilty verdict. Danski maintains that the instruction violated his right to due process and a jury trial.

The Michigan Court of Appeals denied this claim. The court of appeals first reviewed the statutory definition of UDAA:

> Taking possession of and driving away a motor vehicle—Any person who shall, willfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years.

*Danski*, 2019 WL 1924942, at *2 (quoting Mich. Comp. Laws § 750.413).

The Michigan Court of Appeals then reviewed the felony complaint and preliminary jury instruction regarding UDAA, both of which included language of a principal and an aider and abettor (fix). The felony complaint charged as follows:

> COUNT 2: MOTOR VEHICLE: UNLAWFUL DRIVING AWAY [Defendant, contrary to law,] did willfully and without authority, take possession of and drive or take away, or did assist in, or was a party to such taking possession, driving or taking away, of a motor vehicle, to-wit: A 2011 FORD FOCUS belonging to another, to-wit: AMY ARMSTRONG; contrary to MCL 750.413.

*Danski*, 2019 WL 1924942, at *3.

The trial court gave this preliminary jury instruction regarding UDAA:

> And Count II, that Jordan Christopher Danski did willingly and without authority take possession of and drive away or did assist in or was a party to such taking, possession, driving or taking away of a motor vehicle, to wit a 2011 Ford Focus belonging to another, to wit, Amy Armstrong.

*Id.*

In this context and in light of the evidence, the state court held that the instruction was appropriate:

> In this case, the record reflects that the defendant was charged with either willingly and without authority taking possession of and driving away or assisting another in taking, possession, driving or taking away of a motor vehicle. Review of the evidence presented at trial in a light most favorable to the prosecution establishes that a reasonable jury could conclude that defendant assisted in the taking and driving away of the stolen vehicle. Particularly, the record reflects that Apolzan identified defendant's roommate and close friend as having driven the stolen vehicle. Further, defendant's cell phone records placed defendant's cell phone at or near the situs of the home invasion and the initial driving away of the vehicle. The vehicle, when recovered by the

police, contained defendant's fingerprints on numerous items within the vehicle. Evidence also established that defendant fled the scene of the accident involving the stolen vehicle. A trial witness testified that he saw defendant behind the wheel of the stolen vehicle trying to restart it after the crash. That witness testified that he confronted defendant at the scene of the crash and defendant fled the scene.

The direct and circumstantial evidence presented in this case established a factual basis to support the trial court's supplementation of its instructions because the jury could rationally conclude from the evidence that defendant committed the UDAA offense or assisted another person in the commission of it. Accordingly, the trial court did not err by issuing the supplemental instructions.

*People v. Danski*, No. 340762, 2019 WL 1924942, at *4 (Mich. Ct. App. Apr. 30, 2019)

The Court finds instructive the Supreme Court's decision in *Lopez v. Smith*, 574 U.S. 1 (2014). In *Lopez*, the defendant was charged with the first-degree murder of his wife who was killed by a blow to her head from a fireplace log roller. *Id.* at 2. During trial, the prosecution focused on a theory that the defendant committed the murder, while the defense suggested that a former employee of the defendant committed the crime. *Id.* At the close of evidence, the prosecution requested a jury instruction based on a theory of aiding and abetting, and the trial court granted that request. *Id.* The jury convicted the defendant of first-degree murder without specifying which theory of guilt it adopted. *Id.* The state supreme court affirmed the conviction. *Id.* at 3. On federal habeas review, the district court granted habeas relief, and the Ninth Circuit affirmed. *Id.* The Ninth Circuit noted that the murder

11

charge provided sufficient *preliminary* notice that the defendant could be convicted on an aiding-and-abetting theory because under California law "aiding and abetting a crime is the same substantive offense as perpetrating the crime." *Id.* at 4 (quotation omitted). Nevertheless, the Ninth Circuit concluded that the defendant's right to notice was violated because the prosecution presented the case only on the theory that the defendant had delivered the fatal blow. *Id.*

The Supreme Court reversed, holding that its own precedent did not "clearly establish[ ] that a prosecutor's focus on one theory of liability at trial can render earlier notice of another theory of liability inadequate." *Id.* at 7. Absent such clearly established law, habeas relief was not warranted. *Id.*; *see also id.* at 9 ("Absent a decision of ours clearly establishing the relevant standard, the Ninth Circuit had nothing against which it could assess, and deem lacking, the notice afforded respondent by the information and proceedings.").

Here, the charging document and initial jury instruction gave Danski adequate notice of the charges and their possible theories of conviction. Therefore, the aiding and abetting jury instruction did not violate clearly established Supreme Court precedent. Thus, the state court's decision was not an unreasonable application of clearly establish Supreme Court law, nor was it based on an unreasonable determination of the facts. As such, the Court denies relief on this ground.

### B.  Claim Two: Sufficiency of the Evidence

In his second claim, Danski argues that the prosecution presented insufficient evidence to support his convictions.

On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017).  First, sufficient evidence supports a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Second, on habeas review, a federal court may not grant relief simply because the federal court disagrees with the state court decision denying a sufficiency of the evidence challenge.  "'The federal court instead may do so only if the state court decision was objectively unreasonable.'" *Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (explaining that when analyzing a Jackson claim on habeas review, a reviewing court "cannot even inquire whether any rational trier of fact would conclude that petitioner [ ] is guilty of the offenses with which he was charged.  Instead, [the reviewing court] must determine whether the [state] Court of Appeals itself was unreasonable in its conclusion that a rational trier of fact could

find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial") (emphasis in original) (citation omitted).

### 1.

After reciting the proper standard, the Michigan Court of Appeals held that direct and circumstantial evidence established Danski's guilt:

> To connect defendant to the home invasion and theft of the vehicle, the prosecution presented evidence that established defendant's movement to the vicinity of the complainant's home and the locations of the disposal of the contents of the stolen vehicle. The cell phone evidence established where defendant ventured during the early morning hours on the date of the commission of the crimes. The prosecution also presented evidence of defendant's fingerprints on numerous items found within the stolen vehicle after he crashed it and fled the scene of the accident. Further, defendant's statement during his police interview also indicated that he knew that the auto theft originated with a home invasion without being informed of that fact or any prompting by the investigating officers.
>
> Defendant argues that his cell phone usage evidence did not establish his involvement in the crimes because the complainant's address and his two addresses were all within range of the same three cell phone towers and the prosecution failed to pinpoint his exact location to place him at the scene of the crimes. Evidence, however, established that a cell phone normally interacts with the nearest tower unless some other factor interferes with the interaction, such as a physical blockage. The record reflects that expert testimony clarified that the specific towers that interacted with defendant's phone without interfering obstacles permitted the inference that defendant traveled along a pathway from the complainant's home to the locations where her stolen items were recovered. Although defendant presented expert testimony that advocated a different interpretation of the evidence, the jury could accord the weight to the evidence it deemed fitting in light of all of the evidence presented in the case. That the jury did not accord the weight he thinks it should have given his alternative explanation does not establish that the jury convicted him on insufficient evidence.

14

> Moreover, review de novo of the evidence in a light most favorable to the prosecution establishes that the evidence presented at defendant's trial sufficed to support the jury's decision that defendant committed the home invasion and UDAA on June 24, 2015. Both direct and circumstantial evidence enabled the jury to draw inferences and conclude beyond a reasonable doubt that defendant committed the charged offenses.

*Danski*, 2019 WL 1924942, at *5.

## 2.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. The Court, therefore, begins by setting forth the elements of Danski's convictions under Michigan law.

Under Michigan law, a person is guilty of first-degree home invasion when: (1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling. *Danski*, 2019 WL 1924942, at *4 (citation omitted).

15

The elements of unlawfully driving away an automobile are: (1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done willfully, and (4) the possession and driving away must be done without authority or permission." *Id.* at *5.

Finally, to convict a defendant under an aiding and abetting theory, the prosecution has to prove beyond a reasonable doubt that (1) the crime charged was committed by the defendant or some third person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. *Id.* at *3 (citation omitted).

The Michigan Court of Appeals held that the cell phone evidence, Danski's comment during a police interview indicating a knowledge of the home invasion, and that his fingerprints were in the stolen vehicle supported the jury's verdict.  In addition to the evidence cited by the Supreme Court, also incriminating is a jail call between Danski and defense witness Jenah Apolzan which was played for the jury. The victim testified that clothes that were in a gym bag in her vehicle were never recovered.  During a jail phone call between Danski and Apolzan, Danski repeatedly asked Apolzan to "get rid of the clothes."  (ECF No. 6-14, PageID.1403-04.)

Evidence of Danski's guilt is far from overwhelming, but *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). On federal habeas review, the Court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

Given the doubly deferential standard of review applicable to sufficiency of the evidence claims, Danski has not shown that the Michigan Court of Appeals' decision denying relief on this claim was contrary to, or unreasonably applied, clearly established federal law. It is for the factfinder to weigh the evidence, assess the witnesses' testimony, and resolve any conflicts in the testimony or issues of witness credibility. *Jackson*, 443 U.S. at 319. The factfinder, not a federal court on habeas review, has the responsibility "to draw reasonable inferences from basic facts to ultimate facts." *Id.* And viewing the evidence in the light most favorable to the prosecution, the state court was not unreasonable in finding that a rational trier of

fact could find Danski guilty beyond a reasonable doubt based upon the evidence introduced at trial.  Habeas relief is denied on this claim.

## C.  Claim Three: Ineffective Assistance of Counsel

In his third claim, Danski asserts that he was denied the effective assistance of trial and appellate counsel.  Specifically, he maintains counsel failed to: (1) interview and call alibi witnesses, (2) object to the prosecution's expert witness; and (3) consult or retain an expert in the triangulation method for determining the location of a cell phone.  Danski further claims that appellate counsel was ineffective for failing to raise the expert witness claims to the Michigan Court of Appeals.

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Danski must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *See id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'"  *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in

18

tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and

quotation marks omitted).  "[T]he question is not whether counsel's actions were

reasonable"; but whether "there is any reasonable argument that counsel satisfied

*Strickland*'s deferential standard." *Id.*

### 1.

First, Danski claims that counsel was ineffective for failing to interview and

call two alibi witnesses, Ivneet Singh and Andrea Howland.  On remand from the

Michigan Court of Appeals, the trial court held an evidentiary hearing on this

ineffective assistance of counsel claim.  Danski, defense counsel, Singh and

Howland testified.  (*See* ECF No. 6-7.)  Following the hearing, the trial court issued

a written opinion denying the ineffective assistance of counsel claim.  (*See* ECF No.

6-17, PageID.1808-1813.)  The Michigan Court of Appeals also held that counsel

was not ineffective:

> Respecting Ivneet Singh, defense counsel attempted to endorse Singh
> as an alibi witness shortly before trial, but the trial court denied the
> request as untimely.  Singh testified at the evidentiary hearing that she
> talked with defendant by Snapchat after 1:45 a.m. on June 24, 2015 and
> her conversation lasted about 20-30 minutes.  She recalled the time of
> the conversation because she customarily called defendant after leaving
> her workplace at 1:30 a.m.  She admitted, however, that she did not
> know what defendant was doing at 3:00 a.m., the time that the data
> downloaded from defendant's cell phone indicated his use that placed
> him within the vicinity of the complainant's home and the disposal of
> the complainant's knives and papers.  At trial, the prosecution relied on
> the cell phone data to establish the timeline of defendant's movements
> on the morning of the commission of the home invasion and car theft.
> Because Singh's communication with defendant occurred more than an

hour before the commission of the charged offenses and defendant's cell phone data established his movements within the vicinity of the complainant's home and the disposal of the complainant's knives and papers, Singh's testimony would not have provided defendant an alibi defense. Accordingly, defendant cannot establish that defense counsel's conduct fell below an objective standard of reasonableness. Further, he was not deprived of a defense by counsel's failure to timely endorse and call Singh as a witness at trial.

The record reflects that the trial court properly considered and weighed all of the evidence presented by the parties for its determination of defendant's motion for a new trial and claims that defense counsel provided ineffective assistance. The trial court's factual findings were supported by record evidence and we find no legal error that undermines its decision. The trial court, therefore, did not err by ruling that defense counsel did not provide ineffective assistance regarding Singh as a witness.

***

Defendant submitted an affidavit of Howland with his motion for a new trial. In her affidavit, Howland stated that, on June 24, 2015, she and defendant were in the basement of the home where defendant and Moore lived watching a movie when Moore arrived around 2:00 a.m., showed defendant a small white car in the driveway, and asked defendant for help to get rid of the car. She stated in her affidavit that defendant and Moore left the house for approximately 30 minutes. At the evidentiary hearing held by the trial court on defendant's motion for a new trial, on direct examination Howland testified to the same facts as stated in her affidavit.

She testified that she felt that defendant had been wrongfully convicted and that she was his alibi. She affirmed that she knew of his arrest on the charges and communicated with him before his trial while he remained in jail. She knew that he pleaded guilty during 2016 to the charge of receiving and concealing stolen property and affirmed that later defendant told her that he faced charges for home invasion. Howland testified that she placed two calls to defense counsel and stated that she felt she had relevant information about defendant's case. She stated that she also wrote a letter to defense counsel that stated that

20

she was present with defendant and could provide information about his whereabouts. She testified that defense counsel never responded. Although she felt she was defendant's alibi, she admitted that she did not attend defendant's trial.

Defense counsel testified that he had no recollection of any communication from Howland. His testimony indicates that he did not know who she was. Defense counsel testified that he met with defendant to establish a defense theory and in that regard defendant maintained for months that he was innocent because he slept during the time the crimes were committed. Defendant did not disclose any details that varied from his sleep-based defense until his trial was imminent. Defense counsel also testified that he routinely investigated potential witnesses if a client informed him of the names of potential witness. He declared that he followed up on all information given to him.

When reviewing a trial court's factual determinations made following an evidentiary hearing, if resolution of a factual issue depends on the credibility of witnesses or the weight of evidence, we must defer to the trial court's superior opportunity to evaluate these matters. *People v. Sexton* (After Remand), 461 Mich. 746, 752; 609 N.W.2d 822 (2000). The trial court in this case concluded that Howland's potential trial testimony would not have provided defendant a complete alibi. The record supports the trial court's finding because she could not establish defendant's whereabouts for the entire time from 12:00 a.m. to 8:00 a.m. on the morning of the crimes. Although the trial court did not articulate a specific finding that Howland lacked credibility, the record reflects that the trial court weighed her testimony and defense counsel's testimony and decided that defense counsel's testimony was more credible. Giving the trial court the deference we must in this case, we cannot say that the trial court's factual findings constituted clear error. Nor do we conclude that the trial court erred by ruling that defense counsel's conduct did not fall below an objective standard of reasonableness. The record establishes that defense counsel properly exercised his discretion in matters of trial strategy. We cannot substitute our judgment for that of defense counsel regarding matters of trial strategy, or assess his competence with the benefit of hindsight. …

Moreover, even if defense counsel's conduct fell below an objective standard of reasonableness because he did not call Howland as a trial

21

witness, defendant has not established that, but for his counsel's error, there is a reasonable probability that the outcome of his trial would have been different. As explained above, the prosecution presented the jury substantial direct and circumstantial evidence from which they could find defendant guilty of the charged offenses. Although Howland could have provided testimony regarding defendant's whereabouts, her testimony did not negate or even undermine the evidence of defendant's cell phone use that place him within the vicinity of the complainant's home and the disposal of the complainant's knives and papers during the morning of the commission of the crimes. The trial court ruled that defendant could not establish that the outcome of his case would have changed with the testimony of the witnesses defense counsel did not call at trial. The record supports the trial court's decision. Accordingly, we find no merit to defendant's claim of error.

*Danski*, 2019 WL 1924942, at *9-11.

Danski fails to overcome the doubly deferential standard of review owed to the state court's disposition of this claim because counsel reasonably could have decided not to call these witnesses. First, counsel testified that Danski's initial defense was that he was sleeping the entire night and did not disclose details regarding these witnesses' relevance until closer to the trial. (ECF No. 6-17, PageID.1847-48.) Before learning about these witnesses, defense counsel focused on the cell phone evidence. Second, Singh's testimony would have provided an alibi for only approximately 30 minutes, and not for the time period identified as most relevant according to the prosecution's expert witness. Additionally, defense counsel testified that Danski did not want to call Singh as a witness. (*Id.* at PageID.1836-37.)

Howland's testimony, while potentially more helpful than Singh's, also was not without issues.  Most notably, she admitted that she could not account for Danski's location for about 30 minutes on the night of the home invasion and she placed blame on Jeffrey Moore, who died sometime after the home invasion but after Danski's trial.  Courts view with skepticism post-trial testimony which "conveniently blame[s] a dead man – someone who will neither contest the allegations nor suffer punishment as a result of them."  *Herrera v. Collins*, 506 U.S. 390, 423 (1993).

"Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence."  *Strickland*, 466 U.S. at 689.  "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  Applying AEDPA's doubly deferential standard of review, it was not unreasonable for the Michigan Court of Appeals to conclude that counsel's performance was within the wide range of reasonable strategies and that Danski was not prejudiced by defense counsel's performance.  The Court denies relief.

**2.**

Danski next argues that counsel was ineffective for failing to object to the prosecution's expert witness, Detective Kevin Miller.  He argues that Miller's

23

testimony failed to meet the requirements of Michigan Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), because Miller failed to perform a triangulation analysis of the cellular phone data. Additionally, Danski claims that defense counsel was ineffective because the defense's expert also did not use the triangulation method of analysis.

Respondent maintains that both these claims are procedurally defaulted. The doctrine of procedural default applies when (1) a petitioner fails to comply with a state procedural rule, (2) the rule is actually relied upon by the state courts, and (3) the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006).

The Michigan Court of Appeals denied relief under Mich. Ct. R. 6.508(D)(3). Enforcement of Rule 6.508(D)(3) constitutes an independent and adequate state ground sufficient to invoke the procedural default bar. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012). The Court, therefore, may consider the merits of Danski's ineffective assistance of trial counsel claims only if he shows (1) cause exists for the default and prejudice will result from it, or (b) failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Petitioner asserts that his appellate counsel's ineffectiveness establishes cause to excuse the default.

24

When an ineffective assistance of counsel claim is asserted as cause to excuse

a procedural default, the ineffective assistance claim is reviewed *de novo*:

> "An argument that ineffective assistance of counsel should excuse a
> procedural default is treated differently than a free-standing claim of
> ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222,
> 236 (6th Cir. 2009). In particular, "[t]he latter must meet the higher
> AEDPA standard of review, while the former need not." *Id*. at
> 237...Thus, we review *de novo* the question of whether ineffective
> assistance of appellate counsel excuses [a petitioner's] procedural
> default.

*Chase v. MaCauley*, 971 F.3d 582, 591-92 (6th Cir. 2020).

On appeal, "counsel has no obligation to raise every possible claim."

*McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). "[T]he decision of which

among the possible claims to pursue is ordinarily entrusted to counsel's professional

judgment" and "[c]ounsel's performance is strongly presumed to be effective." *Id.*

(quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)). Danski fails to

overcome the presumption that appellate counsel's performance was effective.

The state court, although finding the claims defaulted, addressed these claims

on the merits in the alternative. First, the state court held that Danski failed "to

provide a basis for his trial counsel to have objected to Detective Miller as an expert

witness as Detective Miller testified to the movement of Defendant's cell phone

rather than the actual location of Defendant. It is the task of the jury to then weigh

the evidence." (ECF No. 1-7, PageID.128.) Where the state court held that the

evidence was properly admitted, Danski cannot show that appellate counsel was ineffective for failing to raise this claim on direct appeal.

Second, as noted by the trial court, Danski fails to produce an affidavit describing testimony favorable to the defense that would have been elicited from an expert in triangulation.  (*See* ECF No. 1-7, PageID.130.)  Absent such a proffer, Danski cannot show that defense counsel's failure to retain an expert in triangulation prejudiced the defense.  In turn, appellate counsel was not ineffective for failing to raise this claim.

Neither of Danski's expert-witness related ineffective assistance of trial counsel claims were clearly stronger than the claims presented.  Therefore, Danski may only overcome the procedural default by showing that failure to consider the claims will result in a fundamental miscarriage of justice.  The miscarriage-of-justice exception requires a showing that a constitutional violation probably resulted in the conviction of a person who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  This requires a petitioner to "present new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017) (citing *Schlup*, 513 U.S. at 321, 324).  Danski has made no such showing. These claims are barred by procedural default and do not warrant habeas relief.

### D.  Sentencing Claim

Lastly, Danski maintains that the trial court violated his right to due process by sentencing him to a harsher sentence because he maintained his innocence after trial.  Relatedly, he claims that trial and appellate counsel were ineffective for failing to raise this issue at sentencing or on appeal.

The Fifth Amendment right to remain silent "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.'" *Estelle v. Smith*, 451 U.S. 454, 468 (1981) (quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)).  This privilege extends to the sentencing phase of a criminal case.  *See Mitchell v. United States*, 526 U.S. 314, 328-29 (1999).  A sentencing court may not "make adverse inferences from a defendant's silence as to the facts of the offense." *Id.* at 330.  But the Supreme Court has specifically declined to decide "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of [a] downward departure." *Id.*

Danski did not exercise his right to remain silent at his resentencing.  Instead, he addressed the court and stated that he took responsibility for the receiving and concealing stolen property offense and did not understand why he was facing so much time.  (Dkt. 6-16, PageID.1550.)  The trial court discussed the basis for the sentencing guidelines including Danski's "long criminal history without any real

breaks." (*Id.* at PageID.1550.)  The trial court noted that he did not "believe[] that [Petitioner] wouldn't just keep getting in trouble again when you get out, because this has been going on consistently." (*Id.* at 1551.)  The court also noted Danski did not take responsibility for his crime.  (*Id.* at 1552.)

The last state court to issue a reasoned decision regarding this claim is the trial court.  The trial court held that the sentencing court properly considered Danski's lack of remorse, but did not attempt to convince Danski to admit guilt and found "no evidence that the Court would have been more lenient had Defendant admitted guilt."  (ECF No. 1-7, PageID.131.)

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  "[T]he Supreme Court has never held that a court may not consider a defendant's lack of remorse in fashioning a sentence." *Trotter v. Berghuis*, No. 17-2530, 2018 WL 11447868, at *5 (6th Cir. Nov. 20, 2018) (citing *White v. Woodall*, 572 U.S. 415, 423-24 (2014)).  Therefore, consideration of a defendant's remorse is not contrary to or an unreasonable application of clearly established federal law.

Relief is also denied on Danski's related ineffective assistance of trial and appellate counsel claims because counsel is not ineffective for failing to raise a meritless claim.

## IV.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

Here, jurists of reason could debate the Court's resolution of Danski's first two claim: (1) that the supplemental jury instruction on aiding and abetting violated his right to due process and a trial by jury, and (2) that the prosecution presented insufficient evidence to establish his guilt beyond a reasonable doubt.  Therefore, the Court grants Danski a certificate of appealability as to these issues.  The Court finds that reasonable jurists would not debate the Court's conclusions with respect to Danski's remaining claims and denies a certificate of appealability on those claims.

## V.  Conclusion

For the reasons discussed, the Court DENIES the petition for writ of habeas corpus.

The Court GRANTS a certificate of appealability as to Petitioner's claims regarding the supplemental jury instruction and the sufficiency of the evidence.  The Court DENIES a certificate of appealability as to Petitioner's remaining claims.

SO ORDERED.

March 11, 2025                                   s/Sean F. Cox
                                                Sean F. Cox
                                                U. S. District Judge